IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOSEPH J. BROADWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:17-CV-398-WKW |
| | ) | [WO] |
| STATE FARM MUTUAL | ) | |
| AUTOMOBILE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

"No man is allowed to be a judge in his own cause; because his interest would certainly bias his judgment, and, not improbably, corrupt his integrity." The Federalist No. 10 (James Madison). James Madison missed Alabama law, or Alabama law missed James Madison. In Alabama actions involving uninsured and underinsured motorist coverage,[1] the insurer is the coach of the opposing team *and* the referee. Here is how Alabama law on uninsured motorist coverage works: Consumer buys the insurance company's product — uninsured/underinsured (UM/UIM) motorist coverage — as required by the Alabama legislature. Consumer

---

[1] Alabama treats UM and UIM benefits identically under its uninsured motorist statute. *See* 2 Ally Windsor Howell, *Ala. Pers. Inj. & Torts* § 13:6 (2018 ed.). For efficiency's sake, the court will refer generally to "uninsured motorist" or "UM/UIM" insurance or coverage.

is injured by an underinsured motorist who is at fault in the accident. Consumer settles with the motorist for the limits of the underinsured's policy but believes he has not been made whole. So consumer looks to his own insurer to make him whole under the UM/UIM coverage the legislature forced him to buy. Insurer believes — in good faith, let's say — that consumer is entitled to $5,000 instead of consumer's — also good faith, let's say — claim of $25,000. It is only a simple contract dispute, right? And that's what courts are for, right? In Alabama, under present precedent, *wrong*.

In Alabama, the amount of UM/UIM motorist coverage, measured by what the consumer motorist is "legally entitled to recover," *Quick v. State Farm Mut. Auto Ins. Co.*, 429 So. 2d 1033, 1035 (Ala. 1983), must be proven to the insurer (who, remember, is the coach of the opposing team) *before* the game begins.[2] That is, the insurer gets to decide when the insured can sue for breach of contract or bad faith.

Now, this makes sense in a claim for bad faith. After all, parties to a contract are presumed to act in good faith, *see* 23 Williston on Contracts § 63:22 (4th ed. 2006), so before a party can be said to have acted in bad faith, there must be evidence

---

[2] As stated by the Magistrate Judge's Recommendation, "the extent of Plaintiff's damages are, as they were in *Broadway I*, disputed, and therefore, Plaintiff, as the insured, has *not* proven that he is 'legally entitled to collect' for purposes of proving a claim for *breach of contract or for bad faith*." (Doc. # 27, at 8) (emphasis added). In other words, because the insurer simply disputes the extent of Plaintiff's damages out of court, Plaintiff has no recourse in court under the theories of breach of contract or bad faith. For breach of contract actions, this is a problem.

that it possessed all the facts, knew its obligations, and still refused to perform. In the UM/UIM bad faith context, there must be proof the consumer provided sufficient evidence to the insurer — medical records, bills, and so on — showing his damages, but the insurer still refused to pay. Without this rule, the consumer could, while withholding evidence, simply make a claim under his policy, and if his claim is denied, go straight for the jugular by suing for bad faith — an intentional tort for which a jury may impose punitive damages, *see Nat'l Ins. Ass'n v. Sockwell*, 829 So. 2d 111, 138–39 (Ala. 2002) — even though the insurer never knew the factual basis for the consumer's claim.

But one should not confuse bad faith — again, an intentional tort — with a simple breach of contract. When there is a dispute about what the terms of a contract mean, the law normally does not require one party to satisfy the other with an evidentiary showing before suing. To the contrary, it is the prerogative of neutral, civil courts — not a party to the dispute — to resolve the dispute, as courts have done for thousands of years.

That brings us to the current dispute. This is an uninsured motorist case under Alabama law. Before the court is Defendant's motion for summary judgment on Counts I (breach of contract) and III (bad faith) of Plaintiff's amended complaint. (Doc. # 13.) Count II is a direct claim for UIM benefits. The Magistrate Judge recommended the motion be granted and *all* of Plaintiff Joseph J. Broadway's

3

("Broadway") claims against Defendant State Farm ("State Farm") be dismissed without prejudice.[3] (Doc. # 27.) Broadway timely objected to the Recommendation, and State Farm responded to those objections. (Docs. # 29, 30.) Having conducted an independent and *de novo* review of those portions of the Recommendation to which objection is made, *see* 28 U.S.C. § 636(b), the court finds that the objections are due to be overruled and the Recommendation adopted as modified herein.

## I. BACKGROUND

This is the second lawsuit filed in this court arising out of a 2012 car accident involving Broadway and Roger Channell in downtown Montgomery. Both Broadway and State Farm agree that Channell was at fault for the accident and that Broadway was injured in the accident. At the time of the accident, Broadway had a car insurance policy with State Farm that included uninsured and underinsured motorist benefits up to $25,000. Broadway settled with Channell's insurance provider for the full policy limits of $25,000, without litigation. Broadway then sought another $25,000 in UIM benefits from his own carrier, State Farm, claiming

---

[3] The complaint contains three counts. State Farm moved for dismissal of only Counts I and III of the complaint. The Recommendation did not make clear why Count II — the direct claim for uninsured motorist benefits — was subject to dismissal. But the Recommendation's observation that Count II is, "on its own, insufficient to satisfy the amount in controversy necessary for jurisdiction in this court" (Doc. # 27 at 9) suggests that the Magistrate Judge recommended dismissal of Count II under 28 U.S.C. § 1367(c)(3). That provision permits dismissal of claims over which the court has only supplemental jurisdiction if the court has dismissed all claims over which it had original jurisdiction.

that his injuries exceeded the settlement amount. State Farm offered $5,000 in satisfaction of the claim, and Broadway cashed the check.

In the first lawsuit, Broadway sued State Farm for, among other claims, breach of contract and bad faith. This court granted summary judgment for State Farm on the breach of contract and bad faith claims, citing Alabama law requiring a determination of damages *before* a plaintiff may proceed on breach of contract and bad faith claims based on an insurer's failure to pay UIM benefits. *Broadway v. State Farm Mut. Auto. Ins. Co.*, No. 2:13-CV-628, 2016 WL 2946418 (M.D. Ala. May 20, 2016) (*Broadway I*) (dismissing action without prejudice). The Eleventh Circuit affirmed. *Broadway v. State Farm Mut. Auto. Ins. Co.*, 683 F. App'x 801 (11th Cir. 2017).

Broadway brought another lawsuit — this one — based on State Farm's failure to pay the UIM benefits he seeks. This time, he says, things are different. He contends that his breach of contract and bad faith claims are based on facts that arose after he filed the first suit. (Doc. # 12 at 4.) Broadway asserts that, in response to discovery requests in *Broadway I*, he gave State Farm evidence of additional medical treatment he received as the result of the accident. (Doc. # 12 at 6.) This new evidence, he says, established the extent of his damages and triggered State Farm's duty to pay.

State Farm moved for summary judgment, arguing that the additional records are not enough. It says the new medical records show that Broadway had a preexisting injury, suffered a new injury following the 2012 accident, and one of his accident-related injuries had healed. This evidence, it argues, shows there is a legitimate dispute as to damages and thus Broadway has not established the requisite elements to bring claims of breach of contract and bad faith.

The Magistrate Judge filed a Recommendation (Doc. # 27) that Broadway's claims be dismissed without prejudice. This court entered a memorandum opinion and order (Doc. # 31) granting State Farm's motion as to the bad faith claim because Broadway has not already established the amount of damages to which he is entitled. The court deferred ruling on State Farm's motion as to the breach of contract claim until the parties briefed whether a distinction exists between a contract action for benefits *under* a UIM policy and an action for *breach* of a UIM contract for failure to pay benefits.[4] The parties submitted additional briefing, (Docs. # 33, 34, 35), and State Farm's motion is now ripe for disposition.

---

[4] In that order, the court stated:

State Farm argues that the claim for breach of contract is also barred in Alabama until Plaintiff has proved the amount of damages to which he is entitled from the underinsured motorist. There is quite a bit of authority for this statement of the law in Alabama, *see Quick*, 429 So. 2d at 1035; *Aetna Cas. & Sur. Co., Inc. v. Beggs*, 525 So. 2d 1350, 1352 (Ala. 1988) (quoting *Quick*, 429 So. 2d at 1035); *LeFevre v. Westberry*, 590 So. 2d 154, 158 (Ala. 1991) (quoting *Quick*, 429 So. 2d at 1035); *Pontius v. State Farm Mut. Auto. Ins. Co.*, 915 So. 2d 557, 563 (Ala. 2005) (quoting *Quick*, 429 So. 2d at 1035), but that statement is so broad as to include a contract action for benefits *under* a UIM policy as well

Along with submitting supplemental briefing, both parties moved the court to revisit its earlier memorandum opinion and order. Broadway's motion to alter, vacate, or amend (Doc. # 32) asked the court to vacate its earlier order and issue a new opinion more fully discussing the evidence relevant to Broadway's claims. State Farm's motion to reconsider and renewed motion to dismiss (Doc. # 34) asked the court to revisit its denial of State Farm's motion to dismiss as to Broadway's breach of contract claim.

Considering the additional briefing and those motions, the court vacated its earlier memorandum opinion and order. (Doc. # 38.) In the same order, the court gave the parties notice of its intent to convert State Farm's motion into one for summary judgment and gave the parties an opportunity to submit additional materials in support of or in opposition to the motion.[5] (Doc. # 38.) No party did

---

as an action for *breach* of the same policy. The court conceives no analytical difference between the two causes of action, especially where State Farm concedes Plaintiff is entitled to the benefit but merely disputes the amount of damages. The parties did not brief this issue. Hence, the motion to dismiss the breach of contract action is denied without prejudice, with instructions to the parties to brief the legal and analytical difference, if any, between an action for *benefits under* a policy and an action for *breach of* that same policy, in view of the policy language.

(Doc. # 31, at 3.)

[5] When converting a motion to dismiss into a motion for summary judgment, the Eleventh Circuit requires 10 days' notice to the parties. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 701 (11th Cir. 2016); *Milburn v. United States*, 734 F.2d 762, 765–66 (11th Cir. 1984) (holding that 10-day notice was required even though moving party characterized its motion as one to dismiss or, in the alternative, for summary judgment). Rule 12(d) also requires a court converting a motion to dismiss into one for summary judgment to give the parties "a reasonable opportunity to present all the material that is pertinent to the motion." The court notified the parties in its

so. State Farm's motion is now under submission, and the court enters this memorandum opinion and order as its ultimate disposition of State Farm's motion for summary judgment (Doc. # 13).

## II. STANDARD OF REVIEW

Determining the appropriate standard of review hinges on how the court characterizes State Farm's motion. This issue is complicated because Alabama courts have been less than clear on whether a plaintiff's failure to show that he is legally entitled to recover implicates subject-matter jurisdiction — making a Rule 12(b)(1) motion to dismiss appropriate — or goes to the elements of the claim itself — making a Rule 12(b)(6) motion to dismiss or Rule 56 motion for summary judgment appropriate.[6]

---

December 17, 2018 Order and provided them an opportunity, under Rule 12(d), to submit additional evidence and briefing by December 31, 2018. (Doc. # 38.)

[6] For cases treating the issue as jurisdictional, see, e.g., *Ex parte Safeway Ins. Co. of Ala., Inc.*, 990 So. 2d 344 (Ala. 2008) (*Safeway I*) (considering Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction); *Pontius v. State Farm Mut. Auto. Ins. Co.*, 915 So. 2d 557 (Ala. 2005) (treating 12(b)(6) motion to dismiss for failure to state a claim as a 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction). For cases treating the issue as going to the elements of the claim, see, e.g., *Ex parte Safeway Ins. Co. of Ala., Inc.*, 148 So. 3d 39, 43 (Ala. 2013) (*Safeway II*) (stating that "[w]e see no reason why ripeness and subject-matter jurisdiction must be implicated" for the plaintiff to establish that he is legally entitled to recover and stating that defendant may prevail on a Rule 12(b)(6) motion to dismiss); *LeFevre*, 590 So. 2d at 160 ("[W]here the evidence of the extent of damages is disputed, the insured has not proven . . . that he is 'legally entitled to collect'; therefore, one of the elements of proof necessary to support an action for bad faith is missing.").

## A.  Rule 12(b)(1) and Rule 12(b)(6) Motions to Dismiss

The Alabama Supreme Court's latest pronouncement on the matter signaled that, under the state analogue to Rule 12(b)(6), a motion to dismiss for failure to state a claim was a proper vehicle to challenge whether the plaintiff was legally entitled to recover.  *See Ex parte Safeway Ins. Co. of Ala., Inc.*, 148 So. 3d 39, 42 n.2 (Ala. 2013) (*Safeway II*).  *Safeway II* distinguished cases treating the issue as jurisdictional by stating that those cases involved a phantom driver.  *See id.* ("Safeway has not cited, and we have not found, any controlling decisions that apply *Pontius* to cases involving phantom drivers.").  Since this case does not involve a phantom driver, the court will follow *Safeway II*'s guidance and not treat the issue as jurisdictional — and so will not treat State Farm's motion as one under Rule 12(b)(1).

But the fact that State Farm's motion presents matters outside the pleadings makes it inappropriate to consider the motion as a Rule 12(b)(6) motion to dismiss for failure to state a claim.  As every first-year law student should know, a defendant bringing a Rule 12(b)(6) motion must take the complaint as he finds it.  *See* Fed. R. Civ. P. 12(d).  If it presents matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56." *Id.*  State Farm asks the court to take judicial notice of the filings in *Broadway I* in deciding its motion.  Even if it did so, the court must still treat the motion as one for summary judgment.  In support of its motion, State Farm also attaches an affidavit of Paul Schriefer, one of its claims

managers. (Doc. # 14-1.) The motion therefore presents matters outside the pleadings and will be treated as one for summary judgment under Rule 56, as stated in the court's December 17, 2018 Order (Doc. # 38).

## B.    Rule 56 Motion for Summary Judgment

To succeed on a motion for summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). The court views the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

## III. DISCUSSION

Alabama's uninsured motorist statute requires all car insurance policies to contain coverage "for the protection of persons insured thereunder who are legally entitled to recover damages" from uninsured drivers. Ala. Code § 32-7-23. Broadway's policy with State Farm included both UM and UIM coverage triggered when Broadway established that he was "legally entitled to recover," tracking the statute. (*Broadway I*, Doc. # 94-1, at 41.) Whether Broadway established that he was legally entitled to recover is the question raised by State Farm's motion.

## A.  <u>The Legal Backdrop of UM/UIM Claims in Alabama</u>

Our *Quick* drama contains three acts.  The first explains the construction Alabama courts have imposed on the uninsured motorist statute.  The second recognizes that this construction applies to *both* breach of contract and bad faith claims and explains why the failure to recognize the distinction between those claims thirty-five years ago has caused problems ever since.  The third centers on the procedure for UM/UIM actions — the procedure this court is bound to apply — that developed in Alabama in the wake of this construction.

### 1. *Construing Alabama's Uninsured Motorist Statute*

The confusion began when courts interpreted Alabama's uninsured motorist statute to require an insured to prove *both* liability of the uninsured motorist *and* the amount of damages as prerequisites to suing his insurer.  The first authoritative interpretation of the statute came in an Alabama Court of Civil Appeals decision, *State Farm Mutual Automobile Insurance Co. v. Griffin*, 286 So. 2d 302 (Ala. Civ. App. 1973).  In that case, the insurer argued that to show he is "legally entitled to recover damages," the insured must sue and obtain a judgment against the uninsured motorist before bringing *any* claims against the insurer.  *Id.* at 304.  The court rejected that argument, *id.* at 306,[7] but decided to go further and give definitive

---

[7] In *State Farm Fire & Casualty Co. v. Lambert*, 285 So. 2d 917 (Ala. 1973), decided a mere six days before *Griffin*, the Alabama Supreme Court agreed that a judgment is not required,

meaning to the phrase, "legally entitled to recover damages." The court interpreted the phrase to mean that

> the insured must be able to *establish fault* on the part of the uninsured motorist, which gives rise to damages, and must be able to *prove* the *extent of those damages*. In a direct action by the insured against the insurer, the insured has the burden of proving in this regard that the other motorist was uninsured, *legally liable* for damage to the insured, and *the amount of this liability*.

*Id.* (emphasis added). *Griffin*'s interpretation of "legally entitled to recover damages" was uncritically adopted by the Alabama Supreme Court ten years later in *Quick*, *see* 429 So. 2d at 1035, and has become the definitive statement of Alabama uninsured motorist law.

Two aspects of *Griffin* and *Quick*'s construction of Alabama uninsured motorist law are troubling. First is the question, left unanswered except by inference, "Prove to whom?" If a plaintiff need not obtain a judgment to prove liability and damages, the answer is clearly not a court or jury. So it must be the insurer.[8] Second is the requirement that the insured prove *both* liability and *amount* of damages before bringing suit. Often, both the insurer and the insured will agree (as is the case here) that the uninsured motorist was at fault for the accident and that the insured suffered damages because of the accident. If the parties agree on these two points, how has

---

noting in passing that the statute "permits the enforcement of the policy provisions by the insured directly against the insurer without first obtaining a judgment against the insured." *Id.* at 919.

[8] For more on this point, see Section III.A.3.a.

the insured *not* shown that he is "legally entitled to recover damages"? Setting the additional requirement that the insured prove he is "legally entitled to recover damages *in the amount he claims*" is to add words to the statute. But courts are not at liberty to rewrite statutes for the legislature.[9]

The Alabama Supreme Court's *Quick* adoption of a questionable construction of the uninsured motorist statute caused UM/UIM law in Alabama to begin to slide off the rails. But the second mistake in *Quick* — the court's failure to treat breach of contract and bad faith claims as distinct — caused it to jump the tracks completely.

### 2. *Conflating Breach of Contract and Bad Faith*

Beginning with *Quick*, the Alabama Supreme Court has repeatedly held that an insured must prove he is "legally entitled to recover" before bringing *both* breach of contract and bad faith claims.[10] *Quick*, 429 So. 2d at 1035; *Aetna Cas. & Sur. Co.*

---

[9] "[W]here plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect." *DeKalb Cty. LP Gas Co., Inc. v. Suburban Gas, Inc.*, 729 So. 2d 270, 275 (Ala. 1998) (quotation omitted). Moreover, courts may not

> supply words purposely omitted, and should supply an omission only when the omission is palpable and the omitted word plainly indicated by the context; and words will not be added except when necessary to make the statute conform to the obvious intent of the legislature or prevent the act from being absurd; and where the legislative intent cannot be accurately determined because of the omission, the court cannot add words so as to express what might or might not be intended.

*State v. Calumet & Hecla Consol. Copper Co.*, 66 So. 2d 726, 729 (Ala. 1953).

[10] "This threshold burden is placed on the insured because, although he is seeking benefits under his own policy, he is seeking benefits based on the wrongdoing of a third party, and the

*v. Beggs*, 525 So. 2d 1350, 1352 (Ala. 1988) (quoting *Quick*, 429 So. 2d at 1035); *LeFevre v. Westberry*, 590 So. 2d 154, 158 (Ala. 1991) (quoting *Quick*, 429 So. 2d at 1035); *Pontius*, 915 So. 2d at 563 (quoting *Quick*, 429 So. 2d at 1035). But the proposition that breach of contract and bad faith claims are not analytically distinct in this regard is problematic, and after the court handed down this rule, things *Quick*-ly went awry.

To see why, let's take a closer look at each type of claim. To assert the separate tort of bad faith, the plaintiff must prove: (1) the insurer breached an insurance contract with the plaintiff, (2) an intentional refusal to pay the insured's claim, (3) the absence of any reasonably legitimate or arguable reason for that refusal, and (4) the insurer's *actual knowledge* of the absence of any legitimate or arguable reason. *See Ex parte Alfa Mut. Ins. Co.*, 799 So. 2d 957, 962 (Ala. 2001). The plaintiff must "go beyond a mere showing of nonpayment and prove *bad faith* nonpayment, a nonpayment without any reasonable ground for dispute." *Id.*

---

insurer may resist payment on substantive grounds 'that would have been available to the uninsured motorist.'" *Joffrion*, 2014 WL 3518079, at *3 (quoting *State Farm Mut. Auto. Ins. Co. v. Bennett*, 974 So. 2d 959, 962 (Ala. 2007)). "Thus, until the liability of the uninsured motorist has been determined, the insurer and insured occupy an adversary position toward each other."[10] *Quick*, 429 So. 2d at 1035. Their positions remain adverse "until the uninsured motorist's liability is fixed; therefore, there can be no action *based on the tort of bad faith* based on conduct arising prior to that time, only for subsequent bad faith conduct." *LeFevre v. Westberry*, 590 So. 2d 154, 159 (Ala. 1991) (emphasis added). *LeFevre* is a bad faith-only case. *See id.* at 156. Nonetheless, its legal propositions continue to be cited in cases involving bad faith *and* breach of contract. *See, e.g.*, *Pontius*, 915 So. 2d at 563–64; *Ex parte State Farm Mut. Auto. Ins. Co.*, 893 So. 2d 1111, 1115 (Ala. 2004); *State Farm Mut. Auto. Ins. Co. v. Smith*, 956 So. 2d 1164, 1168–69 (Ala. Civ. App. 2006).

For bad faith, the requirement that an insured present substantial evidence of his damages to his insurer before filing suit is sensible. As stated, parties to a contract are presumed to act in good faith. *See* 23 Williston on Contracts § 63:22 (4th ed. 2006). So the insured must point to *something* showing that the insurer denied the claim in bad faith despite knowing all the facts. In the UM/UIM context, that means the insured would have to show that despite the insurer receiving substantial evidence that the insured suffered — for example, $100,000 in medical bills and lost earnings when an uninsured motorist ran a red light and t-boned his vehicle — the insurer still refused to pay up. It makes sense to require the insured to adduce a certain level of evidence to his insurer before bringing a bad faith claim, because the insurer cannot be said to have acted in bad faith for failing to act on facts it did not know. Thus, unless the insured can show that the insurer *did* know the facts yet failed to hold up its end of the bargain, there is no action for bad faith.

Breach of contract claims are different. To make out a claim for breach of contract, a plaintiff must show "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Ex parte Alfa*, 799 So. 2d at 962. While a bad faith action asks whether a party's conduct was so egregious as to give rise to a separate tort, a breach of contract action asks whether a party's conduct was indeed a breach. This is a question of fact. *See Dutton v. Marshall*, 729 So. 2d 860, 862

(Ala. 1998). And the parties submit that question of fact to a neutral third party —
a civil jury — for resolution. Or so it has been for centuries in Anglo-American law.

That is not the case for Alabama breach of contract claims for UM/UIM
benefits. As explained more fully in the following section, to even be heard on a
contract claim, the insured must present enough evidence to satisfy the insurance
company of the amount of damages, which may then assert its own interpretation of
the evidence. And if the insurance company can find a good reason to contest what
the insured claims, it can keep the insured out of court.

### 3. *The UM/UIM Procedure as It Currently Stands*

With a definitive construction of Alabama's uninsured motorist statute and
knowledge that this construction applies to both breach of contract and bad faith
claims, one can begin to piece together a procedure for consumers to follow when
bringing those claims against their insurers. Here goes.

As stated, the Alabama Supreme Court is clear that the insured does not have
to first obtain a judgment against the uninsured motorist to fix the value of his claim.
*See Pontius*, 915 So.2d at 564. The court is also clear that "[w]ithout a determination
of whether liability exists on the part of the underinsured motorist and the extent of
the plaintiff's damages, a claim of bad-faith failure to pay *or* breach of contract is
premature." *Id.* (emphasis added). But it is *not* clear what the court expects insureds

to do — short of filing suit — to achieve a "determination" of their damages under the contract for UM/UIM coverage.

The most recent attempt to clarify what steps an insured must take to bring breach of contract and bad faith claims occurred in *Safeway II*. There, the court held that to prove he is legally entitled to recover — proof of which, again, is a prerequisite to both breach of contract and bad faith claims — the insured must "present[] substantial evidence to survive a motion for a summary judgment or a judgment as a matter of law and the fact finder [must be] reasonably satisfied from the evidence that the motorist should recover damages."[11] *Safeway II*, 148 So. 3d at 43 (quoting *Walker v. GuideOne Specialty Mut. Ins. Co.*, 834 So. 2d 769, 772 (Ala. 2002)).

### a. To Whom Must the Insured Prove his Damages?

Finally, there appears to be some semblance of a method to the madness of UM/UIM coverage: The insured must produce "substantial evidence" to the "fact finder" of the liability of the uninsured driver. A lawyer would reasonably construe the "fact finder" who must be "reasonably satisfied" that the insured has proved his damages to be a court or jury. But the fact finder in Alabama seems to be the claims adjuster.

---

[11] "Should recover damages" would reasonably be construed by most lawyers as "liable" for damages.

Odd as this proposition sounds, several decisions interpreting Alabama law in the wake of *Safeway II* seem to say the fact finder is indeed the claims adjuster. *See Joffrion v. Allstate Ins. Co.*, No. 12-0434-WS-M, 2014 WL 3518079, at *4 (S.D. Ala. July 16, 2014) (Steele, J.) ("[T]he insured must present substantial evidence to *the insurer*, not merely that some vague amount of damage was caused by the fault of the uninsured motorist, but that the full amount of damage he claims actually was (or will be) suffered, that it has the value he claims, and that it was (or will be) all proximately caused by the accident." (emphasis added)); *Lawson v. State Farm Fire & Cas. Co.*, No. 15-00026-N, 2015 WL 2345575, at *8 (S.D. Ala. May 15, 2015) (Steele, J.) (quoting with approval *Joffrion*'s interpretation of Alabama law).

And those decisions are well-supported. After all, the Alabama Supreme Court has repeatedly stated that an insured does not have to sue and receive a judgment to fix his damages. So the "fact finder" that the court has in mind clearly is not a jury (which is what one would expect "fact finder" to mean). The only fact finder to which the court could be referring is the claims adjuster — not the neutral arbiter of fact to whom we have for centuries submitted our disputes for resolution — but a representative of one of the parties themselves.

State Farm appears to have interpreted Alabama law the same way. Its summary judgment motion relies almost exclusively on claims manager Paul Schiefer's list of reasons why he is not satisfied that Broadway's medical bills and

records accurately reflect Broadway's damages. Given these decisions, the court is left with only one conclusion, anomalous as it sounds: Alabama law places the burden on Broadway to present substantial evidence *to State Farm* showing that he is legally entitled to recover in both breach of contract and bad faith in the amount he claims; *i.e.*, that the claims adjuster does not dispute the insured's damages. If the claims adjuster disagrees (irrespective of whether he does so in good or bad faith), Broadway is out of luck, says State Farm.

### b. Taking Insurer's Grounds for Dispute at Face Value

Surely, though, courts would not allow an insurer's contrived reason for disputing damages to keep the insured out of court. After all, the Alabama Supreme Court has said that there must be a *bona fide* or *legitimate* dispute, not that there is to be *no dispute at all*. *See Pontius*, 915 So. 2d at 564 (stating that "where a *legitimate* dispute exists as to liability," a claim of bad faith or breach of contract "is premature" (emphasis added) (quoting *Bowers v. State Farm Mut. Auto. Ins. Co.*, 460 So. 2d 1288, 1290 (Ala. 1984))); *id.* (stating that there is no bad faith "if there is *bona fide* dispute on the issue of damages" (emphasis added) (quoting *LeFevre*, 590 So. 2d at 159)). But despite the court's lip-service to the principle that the insurer's dispute must be reasonable, it is impotent in practice. Alabama appellate courts give little scrutiny to the insurer's proffered reason for disputing the claim.

The cases signal that, when the insurance company can find a ground for disputing the claim, that will be enough to keep the insured's contract case out of court. For example, the Alabama Court of Civil Appeals reversed a plaintiff's verdict in a breach of contract/bad faith case in which the insurance company presented its own evidence disputing "whether the damages claimed by [plaintiff] were attributable to the . . . accident." *State Farm Mut. Auto. Ins. Co. v. Smith*, 956 So. 2d 1164, 1170 (Ala. Civ. App. 2006). And the Alabama Supreme Court held that the insured's failure to refute a claims adjuster's affidavit stating that the insurer "had been unable to determine from the documentation provided by [insured] 'what treatments and injuries were proximately caused by this accident'" was enough to overturn a favorable jury verdict on a bad faith claim. *Safeway I*, 990 So. 2d at 352.

In both *Smith* and *Safeway I*, the insurers presented evidence of a preexisting condition that partially caused the plaintiffs' injuries. For that reason, those courts found a legitimate dispute over the amount of damages.[12] Judge Steele summarized Alabama breach of contract/bad faith law this way: Even if the insured presents

---

[12] Even if the insurer does not provide its own evidence contesting the amount of damages, the plaintiff can find his breach of contract case thrown out of court simply for not producing enough evidence to carry his initial evidentiary burden. For instance, in a breach of contract/bad faith case involving a fatal car crash, the Alabama Supreme Court ordered the trial court to enter a directed verdict for the insurer because "there [was] nothing in the record to show that the plaintiff supplied [the insurer] with any evidence of the amount" that a jury would assess against the tortfeasor in a wrongful death case. *Aetna Cas. & Sur. Co. v. Beggs*, 525 So. 2d 1350, 1352 (Ala. 1988).

evidence that, "considered on its own and favorably to him," reflects his claimed damages, he still has not met his burden "if other evidence, or holes in his own evidence, generate a legitimate dispute as to the quantum of damages proximately caused by the uninsured motorist." *Joffrion*, 2014 WL 3518079, at *7.

Broadway has pointed to no breach of contract cases — and the court's own research revealed none — where an Alabama appellate court scrutinized the insurer's reason for disputing damages and found that it was not legitimate. This leaves Broadway (and all other insureds seeking UM/UIM benefits) in a difficult position where the insurance company can keep breach of contract and bad faith claims out of court by simply proffering a reason why the insured's damages are not as he claimed, creating a dispute. So *Broadway must resolve the dispute before he can begin the dispute* (yes, you read that correctly), and the insurer gets to decide when there is a dispute. Requiring the plaintiff to negate the existence of a pre-litigation dispute over a contract before beginning litigation under that contract is not rational. After all, if there were no dispute, there would be no need to litigate. Yet this is what Alabama law requires.[13]

---

[13] *See generally* Lewis Carroll, *Through the Looking-Glass* (1871).

## B.    Application of Alabama Law to this Case[14]

Fortunately, the court does not have to decide whether Broadway has made out a claim for breach of contract. This court's diversity jurisdiction is based on a $25,000 claim for breach of contract under Count I, a $25,000 direct claim for UM benefits under Count II, and a bad faith claim in an unspecified amount under Count III. The bad faith claim, therefore, is the claim that pushes the amount in controversy over the $75,000 jurisdictional threshold. *See* 28 U.S.C. § 1332(a). As a result, summary judgment in State Farm's favor on the bad faith claim would make the amount in controversy less than $75,000 on the remaining claims, and the court may, in its discretion, decline to exercise jurisdiction over Counts I and II. *See* 28 U.S.C. § 1367(c)(3).

Despite its misgivings about the law of UM/UIM coverage in Alabama, the court is duty-bound to apply the law as Alabama courts would. *See Fidelity Union Tr. Co. v. Field*, 311 U.S. 169, 180 (1940). Applying that law, Broadway has not

---

[14] State Farm argues that *Broadway I* bars the issues raised here through collateral estoppel. Not so. The claims here are based on facts that arose *after* the filing of *Broadway I*. Here, Broadway asserts that medical records and bills produced during discovery in *Broadway I* triggered State Farm's duty to pay and made the later-filed claims in *Broadway II* ripe for adjudication. The court of appeals in *Broadway I* considered whether the amount of Broadway's damages "was still in controversy when [Broadway] filed this civil action." *Broadway v. State Farm Mut. Auto. Ins. Co.*, 683 F. App'x 801, 805–06 (11th Cir. 2017). So even though Broadway produced the medical records and bills giving rise to the claims here during discovery in *Broadway I*, the district court and the Eleventh Circuit could not have considered that evidence in deciding whether Broadway had proven he was legally entitled to recover *before* bringing his breach of contract and bad faith claims.

met his burden to bring a bad faith claim. Broadway has not adequately refuted State Farm's evidence that his damages were caused in part by: (1) medical conditions that preexisted the car accident; and (2) an on-the-job injury he received after the accident. Broadway has also not refuted a new CT scan of Broadway's cervical spine showing that his fracture has healed. (*Broadway II*, Doc. # 14-1, Exs. C & D.)

As to preexisting conditions, State Farm cites two pieces of medical evidence supporting its argument that the amount of damages is in dispute. First, complaining of neck and left arm pain, Broadway had an MRI performed a year before the accident. The MRI showed bulging discs at the C4-5, C5-6, and C6-7 vertebrae. (*Broadway II*, Doc. # 14-1, Ex. A.) Second, Broadway's general physician maintained a list of chronic medical issues predating the 2012 car accident, which included anxiety with panic attacks.[15] (*Broadway II*, Doc. # 14-1, Ex. B.)

State Farm argues this evidence of preexisting conditions creates a legitimate dispute as to how much of his damages were proximately caused by the 2012 car accident. (*Broadway II*, Doc. # 14-1, at 4-5.) Broadway responds by asserting that, even if he had preexisting conditions that the accident exacerbated, the eggshell plaintiff rule allows him to recover for the full extent of his damages. *See Alabama*

---

[15] Broadway argues this list of conditions has nothing to do with the injuries he sustained in the accident and is thus irrelevant to the amount of damages. But Broadway does seek compensation for mental anguish, and State Farm could use evidence of preexisting anxiety and panic attacks to dispute whether his mental-anguish damages were proximately caused by the accident.

*Pattern Jury Instructions: Civil* 11.07 (2d ed. 1993). Those instructions provide that the plaintiff is "entitled to recover for all damages which are the proximate result of defendant's negligence, including damages for the aggravation of any injury or condition which may have existed" at the time of the accident. *Id.* But the eggshell plaintiff rule is no help here because Broadway still must prove the accident *proximately caused* his preexisting maladies to worsen. And proximate cause is exactly what State Farm disputes. *Cf. Hall v. State Farm Mut. Auto. Ins. Co.*, No. 7:10-CV-02137-LSC, 2011 WL 12339633, at *4 (N.D. Ala. Aug. 2, 2011) (citing 11.07 for the proposition that, since the instruction provides "no fixed standard" for deciding damages and leaves it to the jury's discretion, a factfinder must determine the amount of damages before a bad faith claim is even possible). Broadway therefore has not met the burden Alabama law places on him to present substantial evidence that the accident, and not preexisting conditions, proximately caused damages in the amount he asserts in his bad faith claim.

State Farm also argues that Broadway suffered a "new injury" after the 2012 accident, citing 2013 notes made by neurosurgeon Patrick Ryan. Those notes state that Broadway "wrenched his neck" using a hole digger and "has had significant pain since then." (*Broadway II*, Doc. # 14-1, Ex. E.) Dr. Ryan thus ordered another MRI, which revealed that the C4-5 vertebra "looked a little bit worse" than it did shortly after the accident. (*Broadway II*, Doc. # 14-1, Ex. E.) Broadway argues that

the hole digger incident was just an aggravation of his prior, accident-related injuries, and a jury may compensate a plaintiff for later injuries proximately caused by the defendant's negligence. *See Alabama Pattern Jury Instructions: Civil* 11.08 (2d ed. 1993).

Broadway points to no evidence supporting his aggravation theory. Although Dr. Ryan testified generally about how Broadway's strenuous work could make a neck fracture take longer to heal and cause additional pain, he did not opine on whether the hole digger incident was the cause of additional damage to the C4-5 vertebra. (*Broadway I*, Doc. # 116-2, at 8–9.) In fact, Dr. Ryan's testimony was that the deterioration of the C4-5 vertebra could be "any number of things," including a "progression of degenerative change," "progression from an injury," or simply the way the scan happened to be conducted that day. (*Broadway I*, Doc. # 116-2, at 9.) Since the burden is on Broadway, not State Farm, to provide substantial evidence to show his injuries were proximately caused by the accident, State Farm could legitimately dispute the amount of damages to which Broadway was entitled.[16]

Finally, State Farm points to a 2013 CT scan showing that Broadway's cervical fracture had healed to support its claim that damages are legitimately in dispute. (*Broadway II*, Doc. # 14-1, Exs. C & D.) Broadway presents no evidence

---

[16] And he can bring a direct claim for UIM benefits to resolve that dispute.

contradicting the findings of the 2013 CT scan and fails to show why State Farm could not legitimately consider evidence that the fracture had healed in its valuation of Broadway's claim. Broadway thus did not carry his burden to present substantial evidence to State Farm of the value of his damages before bringing a bad faith claim.

All that remains is Counts I and II — the breach of contract claim and the direct claim for UIM benefits. At first, it was not apparent to the court what the difference is between a claim for benefits under a UIM contract and breach of a UIM contract, which is why it ordered supplemental briefing on the issue. State Farm directs the court to the *Alabama Pattern Jury Instructions: Civil*, which make clear that these are two separate causes of action with two separate sets of elements. *Compare Alabama Pattern Jury Instructions: Civil* 10A.13 (2d ed. 1993) (claim for breach of contract) *with Alabama Pattern Jury Instructions: Civil* 20.50 (2d ed. 1993) (claim for uninsured motorist insurance coverage). The court recognizes these two claims as distinct.

All the same, the court finds jurisdictional dismissal of Broadway's direct UIM claim and breach of contract claim warranted. The total value of Broadway's direct UIM claim and breach of contract claim is no more than $50,000, limited by the $25,000 he can recover for each claim because of the policy limits in his insurance contract. Since, to meet the $75,000 jurisdictional threshold, the case requires the Count III claim for bad faith, the court declines to exercise supplemental

jurisdiction over Counts I and II.[17]  *See* 28 U.S.C. § 1367(c)(3).  Those claims will therefore be dismissed without prejudice.  Broadway is free to refile his breach of contract claim and direct claim for UIM benefits in state court.

## IV.  CONCLUSION

Requiring an insured to receive his insurer's blessing before going to court on a breach of contract claim is like asking the opposing team's coach to referee the game.  The law does not give one of the parties a veto power over the other party's

---

[17] When a diversity case meets the amount in controversy through aggregation of claims and one or more of those claims is dismissed, bringing the value of the case below the jurisdictional threshold, whether § 1367(c)(3) permits a district court to decline jurisdiction is the source of a circuit split.  *Compare Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) ("[A] reduction of the amount in controversy below the $50,000 limit simply does not affect the existence of discretion to either retain or dismiss the remaining claims."), *and Stevenson v. Severs*, 158 F.3d 1332, 1334 (D.C. Cir. 1998) (quoting *Shanaghan* and stating that the statute plainly provides for the exercise of discretion whenever the court has dismissed all claims over which it has original jurisdiction "irrespective of whether original jurisdiction arose from diversity of citizenship or existence of a federal question"), *with Wolde-Meskel v. Vocational Instruction Cmty. Servs., Inc.*, 166 F.3d 59, 63-63 (2d Cir. 1999) ("The *Shanaghan* court concluded that one or more of the aggregated claims supplied original jurisdiction and that one or more was supplemental to that claim.  But aggregated claims have never been treated individually for jurisdictional purposes, and nothing in 1367 suggests that Congress intended otherwise.  When state law claims are aggregated, regardless of the amounts at issue, all of them together are 'original,' and none of the constituent claims are 'supplemental.'"), *and Carter v. Tennant Co.*, 383 F.3d 673, 680-81 (7th Cir. 2004) ("The Second Circuit's *Wolde-Meskel* opinion explains thoroughly why aggregated claims of a single plaintiff do not fit the supplemental jurisdiction model.").  The Eleventh Circuit has not taken a position on this issue.

The court agrees with the Fourth and D.C. Circuits' position that the court may dismiss the remaining state-law claims in this instance.  A federal court's discretion to dismiss supplemental jurisdiction over smaller state law claims is not only the better interpretation of the supplemental jurisdiction statute for the reasons described in *Shanaghan*, but also serves important federalism values by keeping state-law claims in state court wherever possible, especially in cases like this one where there is a debatable issue of state law that Alabama courts should decide.

right to sue,[18] and that result cannot have been the intention of the Alabama legislature. *See Holt v. Moore*, 4 Ala. 394, 396 (1842) (interpreting a statute to avoid an application that would make one a judge in his own case on "the thorough conviction that the Legislature could not have intended" it to be so). Yet this is how courts have construed Alabama's uninsured motorist statute. Such a construction makes the insurer "a Judge in his own cause" and is "against all reason and justice." *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 388 (1798) (opinion of Chase, J.).

Thankfully, there is a solution: It is the duty of neutral civil courts "to be the remedy of those evils, which necessarily follow from men's being judges in their own cases." John Locke, *Second Treatise of Government* 204 (1690). This is ancient, and wise, advice.

\*\*\*

It is ORDERED as follows:

1. Plaintiff's motion to alter, vacate, or amend (Doc. # 32) is DENIED as moot.

2. Defendant's motion to reconsider and renewed motion to dismiss (Doc. # 34) is DENIED as moot.

---

[18] Courts will, of course, often enforce arbitration clauses, but only because both parties consented in advance to have someone other than a court decide disputes under the contract. But even an arbitration clause is not as invidious as the UM/UIM scheme under discussion. After all, when parties arbitrate, there is at least some assurance that the arbiter will decide the case in a fair and even-handed manner. There is no such assurance when, as here, one of the parties gets to be the arbiter of fact.

3.    Plaintiff's objection (Doc. # 29) is OVERRULED.

4.    The Recommendation (Doc. # 27) is ADOPTED as modified herein.

5.    Defendant's motion for summary judgment (Doc. # 13) is GRANTED as to Count III of the complaint.

6.    Counts I and II are DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3).

A separate final judgment will be entered.

DONE this 4th day of March, 2019.

                         /s/ W. Keith Watkins
     _____
                    UNITED STATES DISTRICT JUDGE